1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MELVIN WARD,

             Petitioner,

    v.

BRIAN DUFFY, Warden,

             Respondent.

No.  1:13-cv-01367-SKO  HC

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**(Doc. 1)**

      Petitioner, a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254,[1] seeks relief from a conviction for threatening a correctional officer in violation of California Penal Code § 422.  Petitioner was charged and convicted for a statement he made in the course of a counseling session, about which his psychologist was required to issue a warning pursuant to *Tarasoff v. Regents of University of California*, 17 Cal.3d 425 (1976).

## I.    Factual and Procedural Background

### A.    Appellate Court Factual Statement

      During a psychotherapy session, [Petitioner], an inmate with the California Department of Corrections, told

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.

his psychotherapist, Mary Crawley, that he was going to kill a correctional officer.  Crawley determined that Ward posed a serious danger of violence to the potential victim, so she issued a warning as required by *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425 (*Tarasoff*).   The prosecutor utilized the information disclosed by Crawley to prosecute Ward for making a criminal threat in violation of Penal Code section 422.[2]

\* \* \* \* \*

Crawley is a psychologist at Avenal State Prison, where she provides therapy to inmates.  [Petitioner] was one of her patients.  She was helping him with paranoia, coping skills and anger issues.   A part of therapy includes allowing inmates to vent their anger, which often results in the use of vulgarity.  Crawley attempts to bring out things that upset the inmate so that she can help him or her.  Prior to the March 11, 2010 session, she had only met with [Petitioner] for one or two sessions.

On March 11, 2010, [Petitioner] was angry, agitated, and upset during his therapy session.  [Petitioner] explained that he was upset because of prior experiences he had with correctional officers, specifically naming Sergeant Lucas.

[Petitioner] stated he had recently seen Lucas, and related an incident he had with Lucas in the past.  As [Petitioner] talked about the past incident, he became more angry and upset.  [Petitioner] made a general statement about taking out a correctional officer.   Crawley then stopped the session, and verbally warned [Petitioner] that if he made specific threats the statements would not be confidential and would be reported to custody.[3]  Despite the warning, [Petitioner] again referred to the past incident with Lucas and then stated "I will kill the fucking bastard if I get my chance—get my hands on him."   Crawley believed [Petitioner] was serious when he made the threat. [Petitioner] never asked Crawley to communicate his statement to Lucas.

Crawley ended the session at this point and asked the correctional officers to take him out of the office.

The next morning, Crawley arrived at work at the same time as Sergeant Lucas.  As they walked into the prison,

---

[2] All statutory references [in this quotation] are to the Penal Code unless otherwise stated.

[3] The exact testimony was "I gave him a verbal warning that if he went further or made specific threats that those were reportable and that confidentiality would not hold."  Crawley added "I don't believe I gave specific names.  I did say it had to be reported to custody," and she "believe[d she] mentioned the captain."  On cross-examination, when counsel attempted to confirm that Crawley did not tell [Petitioner] she would tell Lucas of the threat, Crawley testified "In thinking it through, I believe I did when I stopped the therapy."

she told Lucas she needed to speak with him regarding a possible threat.  Later that morning, she completed a form that went into her notes and into [Petitioner's] therapy file.  That afternoon, she met with Lucas and told him about the threat, and told him she would be issuing a "Tarasoff Warning" later that day.  She prepared the document, and a copy was sent to the captain and Lucas, and one was placed in [Petitioner's] health record.  The original was filed in records.

The prison system uses an Informed Consent for Medical Care form (form No. 7448).  The form clarifies the psychologist-patient confidentiality principles.  Doctor Wilkinson, a clinical psychologist who contracted with the state to provide services for a short time, filled out the form with [Petitioner], apparently in August 2009.  Crawley did not fill out another form with [Petitioner], but she did verbally review the principles with him.  On the form filled out by Wilkinson, a box was checked which stated that "It is my opinion that although the inmate meets criteria for inclusion in the mental health services delivery system, he may have difficulty understanding the risks and benefits of participation.  Physicians treating this inmate patient should continue to clarify the limits of confidentiality."

At the time of trial, Correctional Sergeant Jeffery Lucas had been employed by the Department of Corrections for 24 years.  Lucas encountered [Petitioner] in 2005.  Lucas was a yard sergeant when two correctional officers he supervised brought [Petitioner] to him because he was acting bizarre and very violent.  Lucas brought [Petitioner] into a hallway and asked him to sit down in an attempt to calm him.  [Petitioner] was handcuffed at the time.  After [Petitioner] sat down, he attempted to lunge out of the chair at Lucas.  Lucas put his hands straight out on [Petitioner's] chest to prevent him from assaulting him.

Lucas saw [Petitioner] approximately 20 times after this incident and before March 11, 2010.  Like most of the other inmates, [Petitioner] was not restrained on any of those occasions.

On March 11, 2010, Lucas again saw [Petitioner].  This time [Petitioner] was about 30 feet away and apparently heading towards Crawley's office.  No conversation occurred.  Lucas gathered the officers he was supervising, as well as Crawley, and warned them to be careful with [Petitioner] because he had a violent behavior history.

The following day, Lucas walked through the gate with Crawley as they headed to work.  Crawley said she needed to talk with Lucas later that day.  Later, Crawley told Lucas the [Petitioner] said he would kill Lucas if

3

[Petitioner] got the chance.  Lucas was concerned that [Petitioner] might carry out that threat.

[Petitioner] testified in his defense.  [Petitioner] was seeing Crawley because he was diagnosed as bipolar with aggressive tendencies and anger problems.  His involvement with Crawley was voluntary because he usually needed someone to whom he could talk, and he did not feel he could talk with anyone else.

He denied threatening Lucas during the March 11, 2010 session with Crawley.  He also denied that Crawley warned him that the psychiatrist-patient privilege would not apply under certain circumstances.  [Petitioner] was agitated during the session because his parole date had been changed and he did not know why.  That was the only reason he was agitated.  Crawley did not terminate the session or tell him she was notifying authorities.  The session ended when Crawley refused [Petitioner's] request to be moved to administrative segregation.

[Petitioner] had seen Lucas on the yard after the 2005 incident, but had not spoken to him nor given him any thought.

The second amended information charged [Petitioner] with one count of making a criminal threat in violation of section 422.  [Petitioner] also allegedly suffered (1) a prior "strike" conviction within the meaning of sections 667, subdivisions (b) though (i) and 1170.12, subdivisions (a) through (d), (2) a serious felony conviction within the meaning of section 667, subdivision (a)(1), and (3) seven prior convictions for which he had served a prison term within the meaning of section 667.5, subdivision (b).

The jury found [Petitioner] guilty of the charged crime, and found all enhancements to be true.  The trial court sentenced [Petitioner] to a total term of 18 years, which consisted of the aggravated term for the crime, plus five years for the section 667, subdivision (a)(1) prior conviction, and seven years for the section 667.5, subdivision (b) prior convictions.

*People v. Ward,* No. F062557 at **2-5 (Cal.Ct.App. Oct. 30, 2012) (reproduced at Doc. 18-1 at 3-6).

**B.**   **Post-Trial Procedure**

Petitioner filed a direct appeal in the Court of Appeals for the Fifth Appellate

District on May 20, 2010, presenting the following issues:

1.   Review should be granted to determine whether section 422 is properly construed as criminalizing words

4

uttered in therapy with the knowledge that they will trigger the therapist's duty under *Tarasoff*.

A.      To afford due process, a conviction must be supported by evidence sufficient for a reasonable trier of fact to find each element of the offense beyond a reasonable doubt.

B.      Because the purpose of a psychotherapist's warning under *Tarasoff* is the protection of the person at risk, words communicated exclusively through such a warning should not violate section 422.

C.      It is consistent with public policy to read section 422 as not criminalizing a communication that occurs through a therapist's *Tarasoff* duty to warn.

D.      To avoid unconstitutionality, section 422 should be construed as not criminalizing a communication in the specific context of a *Tarasoff* warning.

Petition for Review [LD 4].

The Court of Appeals affirmed the conviction, but modified the sentence, in a written opinion filed October 30, 2010.  The Supreme Court denied the petition for review on February 13, 2013.[4]

On August 22, 2011, Petitioner filed a petition for writ of habeas corpus in the California Superior Court for Kings County.  He stated the following grounds for relief:

1.      Conviction was obtained by altered documentation of writings recorded as confidential material. The prosecution knowingly allowed as evidence with malice.

2.      Conviction obtained by the constitutional failure of the prosecutor to disclose to the defendant evidence favorable to the defendant.

Petition for Writ of Habeas Corpus [LD 6].

The Superior Court denied the petition on October 19, 2011.  On January 9, 2012, Petitioner filed another petition for writ of habeas corpus in Kings County Superior Court.  In this petition, he pleaded a single ground for relief: "Due process of

///

---

[4] Because the California Supreme Court summarily denied review, the Court must "look through" the summary denial to the last reasoned decision, which is, in this case, the opinion of the California Court of Appeal, Fifth Appellate District.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991).

1   Penal Code 2932 and 5058 in accordance with the Calif. Rules and Regulations Title

2   15."  The Superior Court denied the petition on March 6, 2012.

3          On August 21, 2013, in this Court, Petitioner filed a petition for writ of habeas

4   corpus pursuant to 28 U.S.C. § 2254.

5   **II.    Standard of Review**

6          Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of

7   the merits of a guilty verdict rendered in state court.  *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5

8   (1979) (Stevens, J., concurring).  Habeas corpus relief is intended to address only "extreme

9   malfunctions" in state criminal justice proceedings.  *Id.*  Under the Antiterrorism and Effective

10  Death Penalty ACT OF 1996 ("AEDPA"), a petitioner can prevail only if he can show that the

11  state court's adjudication of his claim:

12
13         (1) resulted in a decision that was contrary to, or involved an unreasonable application of,
           clearly established Federal law, as determined by the Supreme Court of the United States;
           or
14
15         (2)  resulted in a decision that was based on an unreasonable determination of the facts in
           light of the evidence presented in the State court proceeding.

16         28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams v. Taylor*,
17         529 U.S. 362, 413 (2000).

18  "By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court,

19  subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)."  *Harrington v. Richter*, 562

20  U.S. 86, 98 (2011).

21         As a threshold matter, a federal court must first determine what constitutes "clearly

22  established Federal law, as determined by the Supreme Court of the United States."  *Lockyer*,

23  538 U.S. at 71.  To do so, the Court must look to the holdings, as opposed to the dicta, of the

24  Supreme Court's decisions at the time of the relevant state-court decision.  *Id.*  The court must

25  then consider whether the state court's decision was "contrary to, or involved an unreasonable

26  application of, clearly established Federal law."  *Id.* at 72.  The state court need not have cited

27
28

6

clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

### III. Due Process: Insufficient Evidence

Petitioner contends that his right to due process was violated because the evidence presented was insufficient to prove each element of California Penal Code § 442.

### A. Criminal Threat

California Penal Code § 442(a) provides:

> Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and

7

thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison.

To prove violation of § 422, the prosecution must establish five elements:  "(1) the defendant willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person, (2) the defendant made the threat with the specific intent that the statement . . . [wa]s to be taken as a threat, even if there [wa]s no intent of actually carrying it out,  (3) the threat—which may be made verbally, in writing, or by means of an electronic communication device—was on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, (4) the threat actually caused the person threatened to be in sustained fear for his or her own safety or his or her immediate family's safety, and (5) the threatened person's fear was reasonabl[e] under the circumstances."  *People v. Toledo*, 26 Cal.4th 221, 227-28 (2001) (internal quotation marks omitted).

### B.   Standard for Review of Due Process Claim

To determine whether the evidence supporting a conviction is so insufficient that it violates the constitutional guarantee of due process of law, a court evaluating a habeas petition must carefully review the record to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Windham v. Merkle*, 163 F.3d 1092, 1101 (9th Cir. 1998).  It must consider the evidence in the light most favorable to the prosecution, assuming that the trier of fact weighed the evidence, resolved conflicting evidence, and drew reasonable inferences from the facts in the manner that most supports the verdict. *Jackson*, 443 U.S. at 319; *Jones v. Wood*, 114 F.3d 1002,

1008 (9th Cir. 1997). The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the trier of fact could reasonably have reached its verdict. *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991).

### C.    Unexhausted Claim

The federal petition, prepared by Petitioner himself, presents a confused account of his argument that all five elements of § 422 were not supported by sufficient evidence. As supporting facts, Petitioner writes:

> The evidence, a duty to warn, presented by Dr. Crawley on 3-11-10 was not the record. The duty to warn was typed the next day on 3-12-10. During the therapy session Dr. Crawley had a handwritten record of the events of the therapy session, that would or would not corroborate her statements of a threat to Sgt. J. Lucas. Sgt. J. Lucas was allowed to testify to the uncorroborated duty to warn as though it was the record. Defendant provided the record, which did not have a threat written on it.

Doc. 1 at 5.

Petitioner concedes that he did not raise this issue (the first ground of the federal habeas petition) in state court, explaining "Counsel at the time was unresponsive to the defendant[']s opinions or advice." Doc. 1 at 6. To the extent that Petitioner contends that his due process rights were violated because the written records did not corroborate Dr. Crawley's testimony, this claim is unexhausted.

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Rose v. Lundy*, 455 U.S. 509, 518 (1982); *Buffalo v. Sunn*, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court.

1    *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Picard v. Connor*, 404 U.S. 270, 276 (1971);

2    *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996).  A federal court will find that the highest state

3    court was given a full and fair opportunity to hear a claim if the petitioner has presented the

4    highest state court with the claim's factual and legal basis.  *Duncan*, 513 U.S. at 365; *Kenney v.*

5    *Tamayo-Reyes*, 504 U.S. 1, 8 (1992).  The petitioner must also have specifically informed the

6    state court that he was raising a federal constitutional claim.  *Duncan*, 513 U.S. at 365-66; *Lyons*

7    *v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended*, 247 F.3d 904 (2001); *Hiivala v. Wood*,

8    195 F.3d 1098, 1106 (9th Cir. 1999); *Keating v. Hood*, 133 F.3d 1240, 1241 (9th Cir. 1998).

9        To the extent that the first claim presented is unexhausted, the Court must dismiss it.  28

10   U.S.C. § 2254(b)(1); *Rose*, 455 U.S. at 521-22.  In the second, third, and fourth grounds set forth

11   in the federal petition, however, Petitioner addresses the due process grounds advanced in his

12   direct appeal to the state courts.

13        **D.**      **Claim as Argued in State Court**

14        Even if the Court considers the due process claim as it was argued in state court, Petitioner

15   cannot prevail.  On direct appeal, Petitioner's counsel presented three grounds in support of the

16   argument that Petitioner's conviction violated his due process rights: (1) the warning that Crawley

17   gave to Lucas could not constitute a violation of § 422 because the purpose of the communication

18   was to warn Lucas of possible danger; (2) public policy prohibits a statement communicated

19   through a therapist from being used to establish a violation of § 422; and (3)  § 422 violates

20   Petitioner's right to due process if communications between a patient and therapist form the

21   ground for a criminal prosecution.  The Court of Appeals rejected all three grounds.  Petitioner

22   repeats these three grounds as grounds two, three, and four of his federal petition.

23        **1.**      **Communication as Warning**

24        In the federal petition, Petitioner contends only that the sole communication to Lucas was

25   Crawley's *Tarasoff* warning—Petitioner never communicated directly with Lucas.  This argument

26   is unavailing under California law, which holds that § 422 does not require direct communication.

27   ///

28   ///

> Section 422 does not in terms apply only to threats made by the threatener personally to the victim nor is such a limitation reasonably inferrable from its language. The kind of threat contemplated by section 422 may as be readily conveyed by the threatener through a third party as personally to the intended victim. Where the threat is conveyed through a third party intermediary, the specific intent element of the statute is implicated. Thus, if the threatener intended the threat to be taken seriously by the victim, he must necessarily have intended it to be conveyed.

*In re David L.*, 234 Cal.App.3d 1655, 1659 (1991).

In his more nuanced argument to the state Appellate Court (written by counsel), Petitioner reasoned that "a person who expresses a threat to a psychotherapist, only, and makes no other effort to communicate the threat, would and should have the expectation that precaution will be taken so that the threat is not carried out." Petition for Review by Fifth District Court of Appeal, LD 4 at 8. Put another way, knowing the therapist's duty to give a *Tarasoff* warning, a patient in therapy should confidently be able to express to his therapist his concern that he might hurt the target of his anger, knowing that precautions would be taken to prevent the threat from reaching fruition. Petition for Review by Fifth District Court of Appeal, LD 4 at 8.

The Court of Appeal rejected this argument for two reasons. The first is factual: Petitioner did not testify that he had an expectation that any harm from his statement would be negligible because the *Tarasoff* warning would protect Sgt. Lucas. Instead, Petitioner testified that he never made any threats against Lucas. The record supports this portion of the Court of Appeal's analysis.

In the course of his direct examination, Petitioner denied threatening Sergeant Lucas:

> Q.      Did you threaten Sergeant Lucas?
>
> A.      No, sir.
>
> RT, vol. XIII at 1496.

The prosecutor probed further on cross-examination:

> Q.      During that session, did you ever say to Doctor Crawley that you would take out an officer?
>
> A.      No, I did not.
>
> Q.      Did you ever say to her I'll get at a C.O.?

11

A.   No, I did not.

Q.   Did you ever say to her during that session I want to hurt someone?

A.   I said I wanted to hurt someone.

\* \* \* \* \*

Q.   Now during this March 11, 2010, session, did Sergeant Lucas's name come up?

A.   No, it did not.

Q.   Did you mention anything during that session about any correctional officer placing hands on you?

A.   Oh, yes, I did.

Q.   Did you tell Doctor Crawley in that session who that correctional officer was?

A.   I told her—I told her the sergeant's name and it wasn't Lucas.

Q.   What was the sergeant's name?

A.   Sergeant Sanchez.  I was in Soledad State Prison with him.

RT, vol. XIII at 1498-1499.

Petitioner reinforces the Appellate Court's conclusion in the traverse, reasserting his testimony that he never made a threat against Lucas and accusing Dr. Crawley of falsifying the therapy records.  *See* Doc. 22 at 11-12 ("Petitioner presented exculpatory evidence that there was no threat communicated to the psychotherapist."  All other documents in the prosecution['s] possession were made March 12, 2010. . . There was a few words changed in the record to falsify the doctor's report . . . There was no corroboration in these documents.")

Nothing in the record supports Petitioner's assertion that he threatened Lucas knowing that Dr. Crawley would issue a *Tarasoff* warning and prevent Petitioner's threats from reaching fruition.  In short, the Court of Appeals reasonably reached the conclusion that Petitioner's argument lacked factual support.

Second, the Court of Appeals stated that even if it accepted Petitioner's argument and concluded that he lacked intent to carry out the threat, it would still affirm Petitioner's conviction

of violating § 422, which penalizes the making of the threat "even if there is no intent of actually

carrying it out."  Cal. Penal Code § 422(a).  The Court of Appeals factually distinguished

Petitioner's situation from that addressed in *People v. Felix* (92 Cal.App.4[th] 905 (2001)), on

which Petitioner relied.

Petitioner argued that *Felix* held that a defendant's communication of a threat in the

context of therapy was outside the type of communication reached by § 422.  The court rejected

Petitioner's interpretation.  It first distinguished Petitioner's case, in which the evidence showed

that Petitioner's threat was reported to Lucas, from *Felix*, in which witness accounts of the

therapist's communication of the threat to the intended victim was not admitted into evidence:

> Felix was convicted of several crimes, including violating
> section 422, related to his actions involving a former
> girlfriend.  The evidence relevant to the criminal threat
> conviction consisted of testimony by a psychologist that
> Felix made several comments during a therapy session
> indicating that Felix intended to kill his former girlfriend.
> The psychologist testified that he called the former
> girlfriend, but the trial court sustained an objection when
> the prosecutor attempted to elicit evidence of what was
> said in the conversation.   The former girlfriend was
> precluded from testifying about what the psychologist said
> to her in the phone conversation.
>
> The appellate court concluded that the conviction was not
> supported by substantial evidence because the trial court
> "inexplicably . . . sustained Felix's objections to the
> content of the phone call between" the psychologist and
> the former girlfriend.  (*Felix, supra*, 92 Cal.App.4[th] at p.
> 912.)  Because of the trial court's rulings, "there was no
> evidence that [the psychologist told the former girlfriend]
> the content of Felix's statements"  (*ibid.*), thus precluding
> the People from presenting evidence that Felix's statement
> was communicated to the prior girlfriend.

Doc. 18-1 at 9.

The Court of Appeals also distinguished this case from *Felix* based on the absence of any

evidence that Felix was aware that his psychologist was required to convey his threats, in

contrast to Petitioner, whom Crawley warned of her responsibility under *Tarasoff* :

> The appellate court also found there was insufficient
> evidence that Felix intended his statement be
> communicated to the former girlfriend.  The prosecution
> argued that the statement was admissible pursuant to the
> rule in *Tarasoff*, but it failed to present any evidence that

13

1   Felix was aware of *Tarasoff*, or was aware the
2   psychologist was obligated to convey his threats to his
    former girlfriend. (*Felix*, *supra*, 92 Cal.App.4th at p. 913.)

3   Ward's reliance on this case is misplaced because Crawley
4   testified that she warned [Petitioner] before he threatened
    Lucas that if he made a specific threat the communication
5   would not be privileged and she would have to warn the
    threatened individual. The jury could reasonably infer
6   from this testimony that [Petitioner] knew, and intended,
    his threat would be communicated to Lucas.

7   Doc. 18-1 at 10.

8   In his petition for Supreme Court review and his federal habeas petition, however,

9   Petitioner did no more that reassert his argument, relying on *Felix*. The Court disagrees and finds

10  reasonable both the Court of Appeals' distinction of this case from *Felix* and its determination

11  that Petitioner intended his statement to be taken as a threat.

12  ## 2.   **Public Policy**

13  As his third ground for relief, Petitioner contends that "[i]t is consistent with public

14  policy to read Section 422 as not criminalizing a communication that occurs through a therapist's

15  duty to warn." Doc. 1 at 8. In support of this claim, Petitioner argues that he never told Dr.

16  Crawley to convey his threat to Sgt. Lucas and that Crawley conveyed the threat solely because

17  California law required her to do so.

18  Characterizing Petitioner's claim as "meritless," the Court of Appeals opined that (1) by

19  creating an exception to the psychotherapist-patient privilege in Evidence Code § 1024, the

20  Legislature determined that, as a matter of public policy, the privilege must yield when a

21  therapist concludes that the patient is a danger to himself or others, and (2) by imposing on

22  psychotherapists a duty to warn of a patient's danger to another, the California Supreme Court, in

23  *Tarasoff*, determined that the necessity to avert danger to others outweighed the psychotherapist-

24  patient privilege. Doc. 18-1 at 10-11. Acknowledging that its concern was not with a

25  psychotherapist's duty to warn, the Court of Appeals explained that these actions of the

26  California Legislature and the Supreme Court are evidence of their determination that a patient's

27  right to confidentiality in therapy did not extend to situations in which a patient presents a danger

28  to others. In the absence of privilege, the evidence can be used in any proceedings subject to the

1  rules of evidence, including the criminal prosecution of the declarant. *See Menendez v. Superior*

2  *Court*, 3 Cal.4ᵗʰ 435, 449-53 (1992); *People v. Wharton*, 53 Cal.3d 522, 548-563 (1991); *People*

3  *v. Gomez*, 134 Cal.App.3d 874, 880-82 (1982).

4         As discussed above, under the applicable standard of review, Petitioner bears the burden

5  of establishing that the state court's decision is contrary to, or involves an unreasonable

6  application of, United States Supreme Court precedent. *See Baylor*, 94 F.3d at 1325. Petitioner

7  offers no explanation as to how his federal due process rights are violated by the California

8  court's interpretation of the California Legislature's intent in enacting applicable California law

9  (*Tarasoff*, California Civil Code § 43.92, and California Evidence Code § 1024). Petitioner's

10 direct appeal, which addressed this issue as a matter of California state law, does not resolve the

11 federal petition's deficiency.

12        "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*,

13 502 U.S. 62, 67 (1991) (*citations omitted*). *See also, e.g., Randolph v. California*, 380 F.3d

14 1133, 1147 (9ᵗʰ Cir. 2004) ("A violation of state evidence rules is insufficient to constitute a due

15 process violation"); *Jamal v. Van de Kamp*, 926 F.2d 918, 919 (9ᵗʰ Cir. 1991) ("We do not

16 review questions of state evidence law"); *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9ᵗʰ Cir.

17 1989) ("[E]rrors of state law do not concern us unless they rise to the level of a constitutional

18 violation"). The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes "a highly

19 deferential standard for evaluating state-court rulings," requiring "that state-court decisions be

20 given the benefit of the doubt." *Woodford*, 537 U.S. at 24 (quoting *Lindh v. Murphy*, 521 U.S.

21 320, 333 n. 7 (1997). Petitioner may only seek habeas relief if the nature or duration of his

22 imprisonment violates federal constitutional provisions.

23        The Court declines to address this state-law question.

24              **3.      Criminalization of Communication in a *Tarasoff* Warning**

25        For his fourth ground, Petitioner contends that construing § 422 to criminalize

26 communication disclosed in a *Tarasoff* warning is unconstitutional. Petitioner neither explains

27 the nature of the constitutional violation nor sets forth any applicable United States Supreme

28 Court precedent. In support of this ground, Petitioner states simply, "[Petitioner] testified and

1    denied giving a threat to the victim Sgt. Lucas.  [Petitioner] did not incriminate himself in any

2    illegal activity."  Doc. 1 at 10.  Petitioner does not address ground four in his traverse.

3          As set forth in the federal petition, ground four is so vague and conclusory as to prevent

4    meaningful examination by this Court.  A federal court may summarily dismiss allegations in a

5    petition that are vague, conclusory, patently frivolous or false, or palpably incredible.  *Hendricks v.*

6    *Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990).

7          Attempts to salvage Petitioner's contentions by resort to the state appeal prepared by his

8    appellate counsel are not helpful.  In arguing this ground before the California court, Petitioner,

9    through his attorney, contended that Petitioner's 14th Amendment due process rights were

10   violated by criminalizing Petitioner's communication with his psychologist.  Petitioner's

11   argument rested largely on the trial judge's efforts to discourage the prosecutor from prosecuting

12   Petitioner.  The trial judge characterized the prosecution as Kafka-esque, citing *United States v.*

13   *Chase*, 340 F.3d 978, 989 (9th Cir. 2003), and  *Felix*, 92 Cal.App.4th at 905.

14         As discussed in ground two above, the California Court of Appeals distinguished

15   *Felix* from Petitioner's case on its facts.  In *Chase*, the federal prosecution of an

16   individual who threatened FBI agents, the circuit court declined to create a federal

17   dangerous patient exception to the testimonial privilege, such as that set forth in

18   California Evidence Code § 1024.  340 F.3d at 979.  Because the court did not analyze

19   the constitutionality of a dangerous patient exception under either federal or state law,

20   *Chase* is not helpful to Petitioner's federal habeas claim.

21         The balance of Petitioner's argument in his direct appeal merely argued the

22   cruelty and absurdity of prosecuting Petitioner for a threat made in the course of a

23   therapy session.  Although the argument refers to a First Amendment right to voice a

24   threat that is not communicated to the intended victim, no federal or California authority

25   is offered to support the claim.

26         As was the case with ground three above,  Petitioner has failed to bear his burden

27   of demonstrating that the state court's decision is contrary to, or involves an

28   *///*

1   unreasonable application of, United States Supreme Court precedent.  *See Baylor*, 94

2   F.3d at 1325.  As a result, the Court must deny this ground for a writ of habeas corpus.

3   **IV.      New Issues in Traverse**

4          For the first time in his traverse, Petitioner asserts that the trial court's determination that

5   Petitioner waived the psychotherapist-patient privilege violated the Fifth Amendment to the U.S.

6   Constitution.  Petitioner also contends that (1) Dr. Crawley's testimony regarding the confidential

7   disclosure form (1030 form) was false; (2) the prosecution failed to establish probable cause for

8   Petitioner's conviction as required by *Illinois v. Gates*, 462 U.S. 213 (1983); (3) due process

9   proscribes Petitioner's conviction based on perjured testimony; (4) the Court failed to determine

10  whether Petitioner posed a serious danger of violence to the victims, as required by *Mavroudis v.*

11  *Superior Court*, 102 Cal.App.3d 594 (1980); and (5) the police and prosecutor concealed

12  significant exculpatory or impeaching evidence in the state's possession.

13         Petitioner raised these claims in his first state habeas petition, which the Kings County

14  Superior Court denied on October 19, 2011.  Petitioner never presented these claims to the

15  California Court of Appeals or Supreme Court.  As a result, the claims are not exhausted.

16         It is also improper to raise substantively new issues or claims in a traverse, and a court

17  may decline to consider such matters.  To raise new issues, a petitioner must obtain leave to file

18  an amended petition or additional statement of grounds.  *Cacoperdo v. Demosthenes*, 37 F.3d

19  504, 507 (9th Cir. 1994).  Petitioner never sought such amendment.

20         Even if Petitioner had exhausted these claims, the Court would decline to address them

21  based on the lack of support for them in the record.

22       **V.      Certificate of Appealability**

23         A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a

24  district court's denial of his petition, but may only appeal in certain circumstances.  *Miller-El v.*

25  *Cockrell*, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a

26  certificate of appealability is 28 U.S.C. § 2253, which provides:

27  ///

28  ///

(a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall

be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b)  There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)      (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A)   the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B)   the final order in a proceeding under section 2255.

(2)  A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3)    The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, a certificate of appealability may issue only if the petitioner has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The petitioner must demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his or her part."  *Miller-El*, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or

18

deserving of encouragement to proceed further.  Petitioner has not made the required substantive showing of the denial of a constitutional right.  Accordingly, the Court declines to issue a certificate of appealability.

**VI.     Conclusion and Order**

Accordingly, the Court hereby ORDERS that:

1.       The petition for writ of habeas corpus is DENIED;

2.       The Clerk of Court is DIRECTED to enter judgment for Respondent; and

3.       The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **September 11, 2015**                    **/s/ Sheila K. Oberto**
                                            UNITED STATES MAGISTRATE JUDGE